Below is an Opinion of the Court.

*/s/ Randall L. Dunn*
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) Bankruptcy Case |
| | ) No. 14-35264-rld13 |
| STEPHANIE BANKS, | ) |
| | ) MEMORANDUM OPINION |
| Debtor. | ) |

On January 25, 2016, I heard argument ("Hearing") on the joint motions of Ad Astra Recovery Services, Inc. ("Ad Astra") and Rapid Cash Payday Loans ("Rapid Cash") to compel arbitration and stay proceedings and for a protective order (collectively, "Arbitration Motions"), opposed ("Opposition") by the Debtor ("Ms. Banks"). (Ad Astra and Rapid Cash are referred to collectively as "Respondents.") Following argument, I gave the parties until February 2, 2016, to file supplemental memoranda as to the impact of the recent District Court opinion in Campos v. Bluestem Brands, Inc., 2016 WL 297429 (D. Or. Jan. 22, 2016) (hereinafter, the "Campos decision"). Both sides availed themselves of the opportunity, and I took the matter under advisement on February 3, 2016.

I have reviewed my notes from the Hearing and relevant documents from the main case docket relating to this contested matter,

Page 1 - MEMORANDUM OPINION

including Ms. Banks' motion for an order to show cause for contempt against the Respondents ("Contempt Motion"), the response ("Response") filed by the Respondents, the Arbitration Motions, the Opposition, Respondents' reply ("Reply") to the Opposition, and the Respondents' and Ms. Banks' supplemental briefs re the Campos decision. See Federal Rule of Evidence 201; In re Butts, 350 B.R. 12, 14 n.1 (Bankr. E.D. Pa. 2006). In addition, I have reviewed relevant legal authorities, both as cited to me by the parties and as located through my own research.

Based on that review, this Memorandum Opinion states the court's findings of fact and conclusions of law under Civil Rule 52(a), applicable with respect to this contested matter under Rules 7052 and 9014.[1]

I. FACTUAL BACKGROUND

The facts material to resolution of the Arbitration Motions are limited and essentially undisputed.

Ms. Banks filed her chapter 13 petition on September 16, 2014. She filed her proposed chapter 13 plan ("Plan") the following day. In her schedules, Ms. Banks listed both Ad Astra and Rapid Cash as general unsecured creditors on Schedule F, and they received notice of her bankruptcy filing. The Plan was confirmed by order entered on December 4, 2014. Copies of the confirmation order were sent to Ad Astra and Rapid Cash on December 6, 2014. The Plan estimated a 0% recovery for

---

[1] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532; all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037; and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Civil Rules 1-86.

Page 2 - MEMORANDUM OPINION

general unsecured creditors. Pursuant to § 1327(b), when the Plan was confirmed, all property of Ms. Banks' bankruptcy estate revested in her individually, and the estate terminated.

On September 17, 2015, Ms. Banks filed the Contempt Motion. In the Contempt Motion, Ms. Banks alleged as to Rapid Cash:

> At the time that Debtor's Chapter 13 bankruptcy plan was confirmed Rapid Cash was reporting the pre-petition debt on Debtor's credit report. At some time after Debtor filed for Chapter 13 bankruptcy protection Rapid Cash disregarded Debtor's automatic stay and either sent Debtor's pre-petition debt to collections or sold Debtor's pre-petition debt to Ad Astra.

Memorandum in Support of Debtor's Motion for Order of Contempt, at 2. As to Ad Astra, Ms. Banks alleged that Ad Astra sent Ms. Banks a single collection notice ("Collection Notice") on August 17, 2015, seeking collection of a prepetition debt in the amount of $40,317.00. Id. at 3. On September 18, 2015, the court issued an Order to Show Cause, scheduling a preliminary hearing on the Contempt Motion for October 28, 2015, at 9:00 AM by telephone.

In the Response, Rapid Cash admitted that Ms. Banks' account was placed with Ad Astra for collection but asserted that such placement occurred prepetition rather than postpetition. Rapid Cash further asserted that it did not send any correspondence or otherwise communicate with Ms. Banks after her bankruptcy filing. Ad Astra admitted that the Collection Notice was sent but asserted that its sending of the Collection Notice was the result of "human error."

> The debtor's file was then scrubbed again and, **within a matter of days**, moved back into proper bankruptcy status. **No other collection attempts were made**.

Page 3 - MEMORANDUM OPINION

Response, at 3 (emphasis in original). At the Order to Show Cause hearing, Judge Brown reassigned the case to me, and the parties were informed that a further hearing would be scheduled the following January.

On December 10, 2015, the Arbitration Motions were filed. In the Arbitration Motions, the Respondents moved to compel arbitration of the Contempt Motion pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2-4. In support, the Respondents relied on the Payday Loan Agreement & Disclosure Statement ("Agreement") signed by Ms. Banks on August 6, 2013, in advance of her bankruptcy filing. The Agreement included the following relevant provisions with respect to arbitration of disputes between the parties, among other provisions:

> The Pre-Dispute Resolution Procedure, Arbitration Provision and Jury Trial Waiver set forth below govern "Claims" you assert against us or any "related party" of ours and "Claims" we or any related party assert against you.
>
> For purposes of this Agreement, our "related parties' include all parent companies, subsidiaries and affiliates of ours (including Ad Astra Recovery Services, Inc.), and our and their employees, directors, officers, shareholders, governors, managers and members.
>
> The term "Claim" means any claim, dispute or controversy between you and us (or our related parties) that arises from or relates in any way to this Agreement or any services you request or we provide under this Agreement ("Services"); any of our marketing, advertising, solicitations and conduct relating to your request for Services; our collection of any amounts you owe; or our disclosure of or failure to protect any information about you. "Claim" is to be given the broadest possible meaning and includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims, and claims based on any constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, negligence, fraud or other intentional

Page 4 - MEMORANDUM OPINION

wrongs) and equity. It includes disputes that seek relief of any type, including damages and/or injunctive, declaratory or other equitable relief. . . . . However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.
. . . .

2. **Arbitration Election**. . . . If a lawsuit is filed, the Defending Party may elect to demand arbitration under this Arbitration Provision of some or all of the Claims asserted in the lawsuit. To avoid piece meal Proceedings to the extent possible, the Complaining Party must assert in a single lawsuit or arbitration all of the Claims of which the Complaining Party is aware and the Defending Party must demand arbitration with respect to all or none of the Complaining Party's Claims.

3. **Non-Waiver**. Even if all parties have elected to litigate a Claim in court, . . . nothing in that litigation shall constitute a waiver of any rights under this Arbitration Provision. . . .

4. **Location and Costs**. The arbitrator may decide that an in-person hearing is unnecessary and that he or she can resolve the Claim based on the papers submitted by the parties and/or through a telephone hearing. However, any arbitration hearing that you attend will take place in a location that is reasonably convenient for you. We will consider any good faith request you make for us to pay the administrator's or arbitrator's filing, administrative, hearing and/or other fees if you cannot obtain a waiver of such fees from the administrator and we will not seek or accept reimbursement of any such fees we agree to pay. We will also pay any fees or expenses we are required by law to pay or that we must pay in order for this Arbitration Provision to be enforced. We will pay the reasonable fees and costs you incur for your attorneys, experts and witnesses if you are the prevailing party or if we are required to pay such amounts by applicable law or by the administrator's rules. The arbitrator shall not limit the attorneys' fees and costs to which you are entitled because your Claim is for a small amount. Notwithstanding any language in this Arbitration Provision to the contrary, if the arbitrator finds that any Claim or defense is frivolous or asserted for an improper

Page 5 - MEMORANDUM OPINION

> purpose (as measured by the standards set forth in [Civil Rule] 11(b)), then the arbitrator may award attorneys' and other fees related to such Claim or defense to the injured party so long as such power does not impair the enforceability of this Arbitration Provision.
>
> . . . .
>
> 9. **Governing Law.** This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA, and not Federal or state rules of civil procedure or evidence or any state laws that pertain specifically to arbitration, provided that the law of Kansas, where we are headquartered, shall be applicable to the extent that any state law is relevant in determining the enforceability of the Arbitration provision under Section 2 of the FAA. . . .

The Respondents argued that the arbitration provisions of the Agreement were enforceable as 1) such arbitration provisions are enforceable and favored under federal law, and 2) enforcement of the arbitration provisions of the Agreement would not conflict with any fundamental objective(s) of the Bankruptcy Code.[2]

In her Opposition, Ms. Banks admitted that she had agreed to the arbitration provisions in the Agreement. However, Ms. Banks raised two arguments in the Opposition as to why the Arbitration Motions should be denied. First, she argued that although the Respondents knew or should have known of the arbitration provisions in the Agreement, they filed the "thoroughly researched" Response to the Contempt Motion. Ms. Banks would be prejudiced if she had to start over arbitrating her dispute with the Respondents, not least because she does not have

---

[2] The Agreement includes a provision allowing Ms. Banks to reject its arbitration provisions, but the right to reject had to be exercised within thirty days after the date of the Agreement, which apparently did not occur. Ms. Banks does not argue that she rejected the arbitration provisions of the Agreement.

Page 6 - MEMORANDUM OPINION

financial resources to pay arbitration fees and costs, and she has not been able to find counsel who are willing to represent her in arbitration proceedings with the Respondents. Accordingly, any rights of the Respondents to arbitrate disputes under the Agreement should be treated as waived. Ms. Banks further argued that the automatic stay is such a fundamental protection for debtors under the Bankruptcy Code that the court should exercise its discretion under Ninth Circuit authority to deny the Arbitration Motions.

In their Reply, the Respondents argued that determinations as to whether the right to arbitrate has been waived are procedural and should be reserved for the arbitrator. Further, even if the court properly could decide the issue, Ms. Banks had not met the high burden to establish that the Respondents had waived the right to arbitration under the Agreement. In addition, the Respondents argued that there was no conflict between arbitrating the parties' dispute as provided for in the Agreement and the goals of the Bankruptcy Code.

As noted above, the parties argued their respective positions at the Hearing, and I gave them an opportunity to submit supplemental memoranda discussing the impact of the Campos decision in relation to the Arbitration Motions before me. In their supplemental brief, the Respondents argued from the Campos decision that there is "no indication that Congress intended to bar arbitration or permit § 362(k) claims to go forward only in limited forums." Campos, 2016 WL 297429, at *10. In its essence, Respondents' argument is that even though resolving alleged violations of the automatic stay is within the core jurisdiction of this court, there is no fundamental conflict between arbitration under the FAA

Page 7 - MEMORANDUM OPINION

and analyzing and deciding automatic stay violation claims under the Bankruptcy Code. In the circumstances of this case, arbitrating Ms. Banks' stay violation claims would not violate any fundamental bankruptcy principle.

In her supplemental brief, Ms. Banks argued that her case is distinguishable from Campos because she "cannot afford the fees and costs of arbitration because all of her disposable income is committed to her chapter 13 plan." Debtor's Supplemental Brief, Docket No. 46, at 4. Accordingly, arbitration does not provide Ms. Banks with an economically viable forum to prosecute her stay violation claims. In addition, Ms. Banks pointed out that the Campos chapter 7 bankruptcy case was a closed "no-asset" case, with no estate administration allowed for, whereas Ms. Banks' chapter 13 case is open, and she continues to perform under the confirmed Plan. Ms. Banks argued that compelling arbitration of her stay violations claims against the Respondents would jeopardize her ability to complete her Plan successfully. Id. at 6-7. Finally, Ms. Banks argued that her individual stay violation claims against the Respondents were "integral" to her case, as opposed to the class action claims encompassing many bankruptcy debtors asserted in Campos, reiterating that the court should exercise its discretion to deny the Arbitration Motions and allow Ms. Banks to continue to prosecute the Contempt Motion in court. Id. at 7.

As noted above, upon receipt of the parties' supplemental briefs, I took the Arbitration Motions under advisement.

## II. JURISDICTION

I have jurisdiction to decide the Arbitration Motions under 28

Page 8 - MEMORANDUM OPINION

U.S.C. §§ 1334, 157(b)(1) and 157(b)(2)(O).

III. DISCUSSION

1. <u>Waiver</u>. By its terms, the arbitration provisions of the Agreement are governed by the FAA, and there is a general presumption that "the FAA supplies the rules for arbitration." <u>Sovak v. Chugai Pharmaceutical Co.</u>, 280 F.3d 1266, 1270 (9th Cir. 2002). Specifically, "waiver of the right to compel arbitration is a rule for arbitration, such that the FAA controls." <u>Id.</u>

"Waiver of a contractual right to arbitration is not favored." <u>Fisher v. A.G. Becker Paribas Inc.</u>, 791 F.2d 691, 694 (9th Cir. 1986). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of **waiver**, delay, or a like defense to arbitrability." <u>Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 24-25 (1983).

The Ninth Circuit applies a three-factor test to analyze whether contractual arbitration rights have been waived: "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." <u>Fisher v. A.G. Becker Paribas Inc.</u>, 791 F.2d at 694 (citations omitted). See <u>Sovak v. Chugai Pharmaceutical Co.</u>, 280 F.3d at 1270, citing <u>Britten v. Co-op Banking Group</u>, 916 F.2d 1405, 1412 (9th Cir. 1990). The party arguing waiver bears a "heavy burden of proof" to establish these elements. <u>Sovak v.</u>

Page 9 - MEMORANDUM OPINION

Chugai Pharmaceutical Co., 280 F.3d at 270 (citations omitted).

Ms. Banks argues, without contradiction, that the Respondents knew or should have known of the existence of the arbitration provisions of the Agreement when they first responded to the Contempt Motion. She then argues that in light of the substantive Response filed and the commencement of discovery prior to the filing of the Arbitration Motions, she would be unfairly prejudiced if she were to be compelled to start litigating her stay violation claims over in a new arbitration proceeding. I note in this case that the Arbitration Motions were filed 48 days, less than two months, after the Respondents filed their initial Response to the Contempt Motion, and Ms. Banks does not assert that any substantial costs have been generated in propounding or responding to discovery to date. Ms. Banks further asserts prejudice from her lack of funds to pay up front costs or fees for arbitration, even if such costs or fees were to be reimbursed later, and her inability to find counsel willing to represent her in arbitration.

In Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691 (9th Cir. 1986), the Ninth Circuit faced a situation where parties litigated alleged federal securities law violation claims for a period of years before a decision of the Supreme Court determined that such claims were arbitrable. The plaintiffs argued that the defendant's belated assertion of a right to arbitration was "prejudicial because [plaintiffs] expended time, money, and effort on responding to pretrial motions and in preparing for trial and conducted extensive discovery of the arbitrable claims." Id. at 697. The Ninth Circuit held that,

> the possibility that there may be some duplicative

Page 10 - MEMORANDUM OPINION

> proceedings is not prejudicial to the [plaintiffs]. The [FAA] requires district courts to compel arbitration even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.

Id. (citation omitted). See Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. at 20 ("the relevant federal law **requires** piecemeal resolution when necessary to give effect to an arbitration agreement") (emphasis in original). In this case, it is not clear that any real prejudice results for an ensuing arbitration from Respondents tipping their hands as to their substantive defenses to Ms. Banks' claims in the Response and the parties commencing discovery that could be relevant both in arbitration and in court.

A party does waive its right to arbitration "when it engages in protracted litigation that prejudices the opposing party." PPG Indus., Inc. v. Webster Auto Parts Inc., 128 F.3d 103, 107 (2d Cir. 1997) (citations omitted). However, generally, "courts do 'not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses because merely participating in litigation, by itself, does not result in a waiver.'" Riso, Inc. v. Witt Co., 2014 WL 3371731, at *10 (D. Or. July 9, 2014), quoting Biernacki v. Serv. Corp. Int'l, 533 F. App'x 741, 742 (9th Cir. 2013). In Riso, Inc. v. Witt Co., the Oregon District Court found no waiver of arbitration rights despite the plaintiff's having incurred approximately $50,000 in allegedly unnecessary local counsel fees in court proceedings before the defendant asserted its right to arbitration. 2014 WL 3371731, at *10. This case does not concern any "protracted litigation" before the Arbitration Motions were filed.

Page 11 - MEMORANDUM OPINION

As to Ms. Banks' arguments that she would be prejudiced because she is committing all of her disposable income to required payments under the Plan and has no money available to pay arbitration fees and costs, and cannot find counsel willing to undertake her representation in arbitration, the Agreement specifically provides for arbitration arrangements to accommodate the needs of claimants such as Ms. Banks with limited resources: "The arbitrator may decide that an in-person hearing is unnecessary and that he or she can resolve the Claim based on the papers submitted by the parties and/or through a telephone hearing. . . . [A]ny arbitration hearing that you attend will take place in a location that is reasonably convenient for you." The Agreement contemplates that any arbitration fees may be waived, or paid by the Respondents without any reimbursement obligation from Ms. Banks. The Agreement further provides for an award of attorneys' fees and costs to Ms. Banks if she is the prevailing party in the arbitration, where the "arbitrator shall not limit the attorneys' fees and costs to which you are entitled because your Claim is for a small amount." Attorneys' fees could only be awarded against Ms. Banks if her stay violation claims were determined to be frivolous or asserted for an improper purpose under Civil Rule 11(b) standards.

Accordingly, the arbitration provisions of the Agreement by their terms represent a credible effort to accommodate the prosecution of small claims by parties with or without counsel. Without a more substantial showing that compelling arbitration in this case would deprive Ms. Banks of the right to pursue her claims against the Respondents, I cannot find the unfair prejudice necessary to support

Page 12 - MEMORANDUM OPINION

waiver.[3]

Based on the foregoing analysis under Ninth Circuit standards, I conclude that the Respondents have not waived their rights under the Agreement to move to compel arbitration of Ms. Banks' stay violation claims.

2. <u>Arbitration of Stay Violation Claims</u>.  The FAA provides that an arbitration provision in a written agreement "shall be valid, irrevocable and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract," and a court is required to stay a proceeding if it is satisfied that the matter in issue is referable to arbitration under the terms of such an agreement.  FAA, 9 U.S.C. §§ 2-3.  The FAA was intended to "revers[e] centuries of judicial hostility to arbitration agreements."  <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 510 (1974).  Accordingly, it establishes "a liberal policy favoring arbitration agreements."  <u>Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.</u>, 460 U.S. at 24.  In fact, a court's duty to "rigorously enforce" arbitration covenants extends to claims based on statutory rights.  <u>Shearson/Am. Express Inc. v. McMahon</u>, 482 U.S. 220, 226 (1987) ("This duty to enforce arbitration agreements is not diminished when a party bound by an

---

[3] The Supreme Court has not been hospitable to arguments that requiring arbitration under the FAA would effectively deprive small claimants of the right to prosecute their claims.  "[T]he FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims."  <u>American Express Co. v. Italian Colors Restaurant</u>, 133 S. Ct. 2304, 2312 n.5 (2013).  The dissent in the <u>American Express</u> case characterized its "nutshell version" of the majority opinion's effect arguably to insulate American Express Co. from antitrust law challenges as follows: "Too darn bad."  <u>Id.</u> at 2313.

Page 13 - MEMORANDUM OPINION

agreement raises a claim founded on statutory rights.").

The leading Ninth Circuit decision analyzing the interface between the FAA and the Bankruptcy Code is Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 671 F.3d 1011 (9th Cir. 2012). In the Thorpe decision, the Ninth Circuit concluded that "[n]either the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude arbitration in the bankruptcy setting." Id. at 1020 (citations omitted). However, with respect to issues within the "core" jurisdiction of the bankruptcy courts, such as the stay violation claims in this case, the Ninth Circuit held that bankruptcy courts have discretion not to send a matter to arbitration if arbitrating the matter would conflict with a fundamental purpose of the bankruptcy statutes. "We join our sister circuits in holding that, even in a core proceeding, the McMahon standard must be met – that is, a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision **only if arbitration would conflict with the underlying purposes of the Bankruptcy Code**." Id. at 1021 (citations omitted and emphasis added). And that discretion must be exercised in the fact-dependent context of the particular matter before the bankruptcy court. See, e.g., MBNA Am. Bank, N.A. v. Hill, 436 F.3d 104, 108 (2d Cir. 2006) ("This determination requires a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy."); New Cingular Servs. v. Burkart (In re Wire Comm Wireless, Inc.), 2008 WL 4279407, at *9 (E.D. Cal. Sept. 16, 2008) ("[T]he bankruptcy judge here had to evaluate the nature of the underlying claims and their effect upon the bankruptcy proceedings before determining whether he had the

Page 14 - MEMORANDUM OPINION

discretion to deny arbitration.").

In Thorpe, Continental Insurance Company ("Continental") had filed a proof of claim and was litigating its breach of contract claim against Thorpe Insulation Company ("Thorpe") in Thorpe's chapter 11 proceedings. Specifically, Continental sought absolution from providing insurance coverage for certain claims relating to asbestos injuries in light of Thorpe's entry into a prepetition Settlement Agreement with Continental providing for a mutual release of claims. Thorpe was seeking confirmation of a reorganization plan that would provide for payment of asbestos injury claims through a § 524(g) trust. The bankruptcy court, affirmed on appeal by the district court, denied Continental's motion to compel arbitration. On further appeal, the Ninth Circuit concluded that "resolution of Continental's claim was a core proceeding." Id. at 1021. It further held that the bankruptcy court did not abuse its discretion in denying Continental's motion to compel arbitration as "adjudication of Continental's claim in any forum other than a bankruptcy court would conflict with 'fundamental bankruptcy policy.'" Id. at 1022.

> The purpose of § 524(g) is to consolidate a debtor's asbestos-related assets and liabilities into a single trust for the benefit of asbestos claimants. See H.R. Rep. 103-835, at 46-48. Congress intended that the trust/injunction mechanism be "available for use by any asbestos company facing . . . overwhelming liability." See id. at 48. Congress tasked bankruptcy courts with ensuring that § 524(g)'s "high standards" are met and gave them authority to implement and supervise this unique procedure. See id. at 47. A claim based on a debtor's efforts to seek for itself and third parties the protections of § 524(g) implicates and tests the efficacy of the provision's underlying policies. Because Congress intended that the bankruptcy court oversee all aspects of a § 524(g) reorganization, only the bankruptcy court should decide whether the debtor's conduct in

Page 15 - MEMORANDUM OPINION

> the bankruptcy gives rise to a claim for breach of
> contract. Arbitration in this case would conflict
> with congressional intent.

Id. The Ninth Circuit reinforced its holding by recognizing that "the purposes of the Bankruptcy Code include '[c]entralization of disputes concerning a debtor's legal obligations' and 'protect[ing] creditors and reorganizing debtors from piecemeal litigation.'" Id., quoting Phillips et al. v. Congelton, L.L.C. et al. (In re White Mountain Mining Co., L.L.C.), 403 F.3d 164, 170 (4th Cir. 2005). "Arbitration of a creditor's claim against a debtor, even if conducted expeditiously, prevents the coordinated resolution of debtor-creditor rights and can delay the confirmation of a plan of reorganization." Thorpe, 671 F.3d at 1023.

Applying the teachings of Thorpe with respect to motions to compel arbitration of claims for violation of the automatic stay, I note that courts have not followed a uniform path in their decisions. Compare MBNA Am. Bank, N.A. v. Hill, 436 F.3d at 109 (reversing the bankruptcy court's decision not to send a stay violation claim to arbitration and holding that "arbitration of [Hill's] claim would not seriously jeopardize the objectives of the Bankruptcy Code [among other reasons] because . . . Hills' estate has now been fully administered and her debts have been discharged, so she no longer requires protection of the automatic stay and resolution of the claim would have no effect on her bankruptcy estate"); with Merrill v. MBNA Am. Bank, N.A. (In re Merrill), 343 B.R. 1, 9 (Bankr. D. Me. 2006) (Motion to compel arbitration denied where estate administration was not complete, and the automatic stay was "the foundation of debtor protection to be provided through the offices of the specialized bankruptcy court."); and Cavanaugh v. Conseco Fin.

Page 16 - MEMORANDUM OPINION

Serv. Corp. (In re Cavanaugh), 271 B.R. 414, 426 (Bankr. D. Mass. 2001) ("Arbitration is not a proper forum for adjudication of a dispute over whether the Defendants violated the fundamental protection of the automatic stay. Enforcement of the arbitration clause under these circumstances would be an abrogation of this Court's obligation to construe and enforce the injunction issuing under its authority and to determine the parties' rights and obligations under bankruptcy law.").

With that background in mind, I turn to analysis of the impact of the Campos decision. At the outset, I note that there were major issues to be resolved in the Campos case that are not concerned in Ms. Banks' case, namely, in Campos, the District Court had to decide based on evidence presented whether an arbitration agreement even existed. In addition, the Campos case was filed as a class action, and the subject arbitration provision included a class action waiver. Neither of those issues is relevant to the decision in Ms. Banks' case. Nevertheless, the District Court's legal analysis in Campos is relevant to some of the questions I face.

As in Ms. Banks' case, Campos concerned alleged stay violation claims. As noted by the District Court in Campos,

> Congress authorized litigation of automatic stay claims in district courts as well as in the bankruptcy court presiding over the debtor's bankruptcy estate, 28 U.S.C. § 1334(b). With no indication that Congress intended to bar arbitration or permit § 362(k) claims[4]

---

[4] Section 362(k) provides:
 (k)(1) Except as provided in paragraph 2, an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate
(continued...)

Page 17 - MEMORANDUM OPINION

> to go forward only in limited forums, the text and legislative history of § 362(k) do not conflict with the FAA.

Campos, 2016 WL 297429, at *10.

Consistent with Thorpe, the District Court recognized that "courts may decline to compel arbitration of core proceedings where arbitration conflicts with the Bankruptcy Code's purposes." Id. Ms. Campos argued that compelling arbitration of her stay violation claim presented a basic conflict with an underlying purpose of the Bankruptcy Code because individual arbitration was not an economically viable means to vindicate her rights. Id. at *11. In rejecting her argument, the District Court noted that "the Supreme Court has specifically rejected the argument that an arbitration agreement that includes a class-action waiver is unenforceable when a class action is the only economically feasible means for enforcing statutory rights," citing American Express Co. v. Italian Colors Restaurant, 133 S. Ct. at 2311 n.4. The District Court went on to hold that the "economic realities of individually arbitrating M. Campos's claim for violations of § 362(k) do not create an inherent conflict with the Bankruptcy Code." Campos, 2016 WL 297429, at *11.

Because Ms. Campos had received her chapter 7 discharge and administration of her bankruptcy estate was complete, the District Court

---

[4](...continued)
circumstances, may recover punitive damages.
    (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

found that "[h]er claim is not 'inextricably intertwined' with her bankruptcy any longer; arbitration will not prevent the coordinated resolution of her rights or delay any plan of reorganization." Id.[5]

In Campos, the District Court ultimately found that the parties had formed a valid arbitration agreement, and granting the defendants' motion to compel arbitration would not conflict with any underlying purpose of the Bankruptcy Code. Id. at *12.

The particular factual record before me differs from Campos in that Ms. Banks filed for relief in chapter 13, and postconfirmation, Ms. Banks is continuing to perform her Plan obligations. She has not received a discharge, and her case remains open. However, when her Plan was confirmed, all estate property revested in Ms. Banks personally (see § 1327(b)), and her bankruptcy estate ceased to exist. Accordingly, there is no on-going estate administration in her bankruptcy case. The Contempt Motion is the only active matter being litigated in Ms. Banks' bankruptcy case. She is making her Plan payments from her current disposable income and is not counting on any recovery from prosecution of the Contempt Motion to fund her Plan. In fact, she never has represented that she would contribute any recovery from prosecution of the Contempt Motion to make Plan payments. I do not mean to discount or disregard the adverse effects supporting a damages award that Ms. Banks may be able to establish from the Respondents' alleged stay violations. Consider the potential traumatic effects from receipt of even a single unexpected bill

---

[5] Citing the Second Circuit's Hill decision, the District Court further found that "the fact that Ms. Campos brought her claim as a putative class action demonstrates that her claim is not integral to her individual bankruptcy proceeding." Id.

Page 19 - MEMORANDUM OPINION

for $40,317.00, as admittedly, Ms. Banks received.

But ultimately, what is at stake in this case are Ms. Banks' personal claims for damages and an award of attorneys' fees and costs for what appears to have been an inadvertent and not repeated postpetition sending and receipt of a billing statement. Resolution of those claims will have no direct impact on performance of her chapter 13 Plan or estate administration in her bankruptcy case. The arbitration provisions of the Agreement, by their terms, provide accommodations for claimants of limited means, such as Ms. Banks, to pursue individual claims in arbitration in a cost effective manner, even pro se, and no evidence has been presented to establish that those accommodations are illusory. In these specific circumstances, I conclude that granting the Arbitration Motions will not conflict with any fundamental purpose of the Bankruptcy Code, and I will grant the Arbitration Motions.

## IV. CONCLUSION

For the foregoing reasons, the Arbitration Motions will be granted. Counsel for the Respondents should submit an order consistent with this Memorandum Opinion within ten days following the date of its entry on the docket.